Wanamaker, J.
The questions arising in this case grew out of attempted attachments by William M. Hahn and W. J. Weirick, the plaintiffs in error, and the one question that is common to both claims, as considered and determined by the courts below, relates to the sheriff’s return upon the writ of attachment. Did the attachment date from the amendment of the return or from the date of the original return?
An examination of the record herein, together with the statutes applicable thereto, discloses the fact that there is a prior and paramount question upon this return w'hich this court must consider and *395 determine; and that is, Was or was not the amendment essential to the validity of the return?
The amendment in both returns relates solely to a report of the fact that “a certified copy of the order of attachment was left with the occupant of the residence.”
Under the statute was the amendment necessary to the validity of the attachment ?
It is a familiar and elementary rule that remedial statutes shall be liberally construed. In some states statutes of attachment have received such liberal construction, but in other states the policy of strict construction has obtained.
The general assembly of Ohio, however, has settled this question for the people and courts of this state in the following words, Section 10214, General Code:
“The provisions of part third and all proceedings under it, shall be liberally construed, in order to promote its object, and assist the parties in obtaining justice.”
It should be observed here that the statutes relating to attachment, and the proceedings thereunder, are embraced within said “Part Third.” And hence the polestar in their construction shall be to “assist the parties in obtaining justice.”
What must be stated in a return upon a writ of attachment ?
This question is one not to be answered by the court; but one already answered by the general assembly of Ohio, by virtue of Section 11836, General Code:
*396 “The officer shall return upon every order of attachment what he has done under it. The return must show the property attached and the time it was attached. When garnishees are served, their names, and the time each was served, must be stated. The officer shall return with the order all bonds given under it.”
Clearly there is nothing specifically said in this statute requiring the return to show that “a copy of the order” was served on the owner or occupant of the premises.
But it is urged that the first sentence of this statute is so general and comprehensive, and so imperative, as to make that duty mandatory. This answer would have much force but'for the language following, which expressly specifies certain things which the return “must” show, to-wit: 1. The property attached. 2. The time it was attached.
Here is the meat of the cocoanut. Return made upon these two facts completes the attachment and brings the property within the custody of the court, unless there are garnishees, when that fact must also appear in the return, agreeable to the statute.
It should also be noted that this same section requires that there shall be returned with the order the bonds given under it. So that we have here another specific thing to be done.
Further reference as to the return is made in Section 11826:
“Then with the freeholders, who must be first sworn by him, he shall make a true inventory and appraisement of all the property attached, which shall be signed by the officer and freeholders, and *397 returned with the order. When the property attached is -real property, the officer shall leave with the occupant thereof, or, if there is no occupant, in a conspicuous place thereon, a copy of the order.”
Nothing here is said about the return showing that “a copy of the order” was so left.
It is an old rule of construction that where a statute specifically and expressly mentions certain things, other things belonging to the same class, or occurring at the same time, are excluded. In short, when a statute makes certain definite things mandatory, the presumption is that the other things associated therewith are not mandatory.
The old Latin maxim expressio unius est exclusio alterius has become a primary and well-settled rule of statutory construction.
In support of this contention it should be further observed that the copy of the order so served on the occupant of the premises is clearly for the sole benefit of the owner. The public have no interest in it. It is like a summons issued upon a petition. It is to advise the owner, through the occupant, that the court has seized his property awaiting the determination of a cause of action now pending in court, or to be brought in court.
The returns made by the sheriff in both the Hahn and the Weirick writs were originally sufficient in law under the statute, and, therefore, all matters pertaining to the amendments thereto become unimportant by reason of such amendments being merely so much surplusage.
A court cannot add to the requirements of a return specifically provided by the general assembly *398 of Ohio by virtue of a statute in such case made and provided.
It should be noted, however, that the defendants in error strongly urge two Ohio cases upon the consideration of the court, The Ohio Life Insurance and Trust Co. et al. v. Urbana Insurance Co. et al., 13 Ohio, 220, and Green v. Coit, 81 Ohio St., 280.
The third paragraph of the syllabus in the first of these clearly distinguishes it from the instant case:
“An execution in favor of A. was levied upon the northwest quarter of section 35, but in the sheriff’s return it was described as being levied on the southwest quarter of that section. An execution in favor of B. was afterward levied upon the same land, and correctly described in the sheriff’s return.
“Held, that the return upon the execution of A. can not be amended so as to affect the priority of B’s lien.”
It will be observed that the defect in the return was a substantial misdescription of the real estate, upon a thing made specifically mandatory through the word “must” in Section 11836, General Code.
In the second case, the Coit case, there was also a misdescription as to the property attached, which in itself is a fatal defect under said section regulating the return, and in and of itself sufficient to support the judgment in that case.
True, the second paragraph of the syllabus holds that the provisions which make it the duty of the officer to leave a copy of the order are “mandatory *399 requirements,” and that a return that fails to show compliance with these requirements is insufficient to give the court dominion over the property, yet, in so far as the Coit case extends the requirements of the return beyond the plain mandatory provisions of the statute, the same is disapproved.
The statute regulating what the return “must” show, rather than any previous decision of the court, is obligatory upon this court.
So far as the two cases above cited may be in conflict with this decision, the same are disapproved.
This holding disposes of all questions as to the return, and makes the Hahn attachment a. lien as of the date of the original return.
There is one question remaining as to the Wei-rick attachment, and that grows out of the affidavit. The question in short is: Was the affidavit legally sufficient to authorize a writ of attachment?
Let us examine the affidavit of Weirick in order to learn the “nature of the plaintiffs claim/” for obviously it is to this we must look in order to determine whether or not the claim was one “arising upon contract.”
The affidavit is as follows:
“W. J. Weirick, being duly sworn, says that the claim sued upon is for fraud and deception on the part of the defendant Walters to induce said Wei-rick to purchase certain shares of stock in the Mansfield Rubber Company, an Ohio corporation, doing business in Mansfield, Ohio, and engaged in the manufacture of automobile tires. That said claim is just. That the amount he believes he ought *400 to recover is six hundred and fifty dollars and interest from May 2, 1910. That the defendant is a non-resident of the State of Ohio.”
Now, what does the statute require by way of affidavit before the attachment shall issue? Section 11820, General Code, reads:
“An order of attachment shall be made by the clerk of the court in which the action is brought, in any case mentioned in the next preceding section, when there is filed in his office an affidavit of the plaintiff, his agent or attorney, showing:
“1. The nature of the plaintiff’s claim;
“2. That it is just;
“3. The amount which the affiant believes the plaintiff ought to recover; and
“4. The existence of any one of the grounds for an attachment enumerated in such section.”
This statute must be applied to the affidavit in question not with the strictness required in a criminal proceeding nor with the particularity essential in a formal pleading. It is enough if the owner is substantially advised as to the matters set forth in said section providing for the affidavit.
This affidavit clearly shows that “the claim sued upon is for fraud and deception upon the part of the defendant Walters to induce said Weirick to purchase certain shares of stock” etc.
• Any business man would understand the nature of this claim from said allegation. Read this language in a newspaper, or anything else than a law book, and any reader of average intelligence would understand it.
*401 The language of the affidavit clearly shows that the claim arose out of a sale of stock and that said sale was brought' about by fraud and deception upon the part of the defendant Walters.
There might be a question as to whether the fraud preceded the contract or the contract preceded the fraud. This may well be left to the casuist.
One thing is quite sure, had there been no fraud there would have been no contract, and had there been no contract there would have been no fraud.
It might be more correct to say that the claim was one “arising from a contract,” or “because of a contract,” or was one “arising upon fraud that induced a contract.” But it is not the purpose of courts to play with phrases in order to juggle justice.
There was a contract of sale. The plaintiff in error paid his money pursuant to that contract. His injury was due to that contract, and no matter how deep such contract may have been steeped in crookedness and crime, within the spirit of the law this was a claim “arising upon contract.” Here is a practical illustration of “The letter killeth, but the spirit giveth life.”
It must be admitted that if the contract were an honest one, and culminated in a promissory note, upon which suit was brought, and an attachment ordered- and had, that then clearly said claim would be one “arising upon contract.” When, however, the contract made by the parties is crooked, fraudulent or criminal, and the party seeks to recover back the money paid on such contract, why should *402 it then be held that it sounds exclusively in tort and the right of attachment does not exist?
The plain paramount purpose of this statute was to provide a remedy for an injury within the scope of the several statutes providing for attachment; that injury was not to be limited merely to honest transactions and honest debts resulting therefrom, but certainly with equal force and reason applies to dishonest transactions inducing contracts growing out of frauds and crimes. To hold that the attachment statutes related only to the former, and did not include the latter, is too absurd to require further argument. It is just such judicial jugglery that has put some courts into deserved disrepute. Such distinctions are too technical to promote justice, and the legislature evidently meant what it said when it laid down for courts the rule of construction in such cases in the following language, “shall be liberally construed, in order to promote its object, and assist the parties in obtaining justice.”
Within the provisions of this statute the claim was one “arising upon contract,” and the “nature of the plaintiff’s claim” was sufficiently shown by the affidavit.
And the further fact that the affidavit charges fraud in connection with the contract shows sufficiently that the debt or claim was fraudulently incurred.
This is not inconsistent with the claim that it arose on contract, because a contract may grow out of dishonest as well as honest transactions.
In substance and effect an attachment is after all only an execution in advance. It subjects the *403 property to the satisfaction of a debt, if the debt be properly proved as pleaded. Naturally there must come a time when that attachment shall ripen into an execution, which execution shall date from the time of the attachment. The attachment is subject to dissolution at the instance of the debtor. If no motion is made to dissolve it, if it is permitted to stand until the final adjudication, it is then too late for any other person in another or independent proceeding to attack or assail its validity. It is clearly too late for the defendant in the original proceeding to attack it.
It must follow that it is likewise too late for third parties in another proceeding to attack it.
The judgment of the court of appeals is reversed and the cause is remanded to the court of appeals for such other and further proceedings in accordance with this judgment and opinion as may be agreeable to law.

Judgment reversed.

Nichols, C. J., Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.